### 5560. HUDSON *v.* THE STATE.

1. A contract signed by one of the parties only, but accepted and acted on by the other party to it, may be just as binding as if it were signed by both parties, if the obligations of the parties are mutual.
2. It is never error to refuse to direct a verdict in a criminal case.
3. The evidence was insufficient to support the inference of a fraudulent intent at the time of the advancement alleged to have been made to the accused, and, therefore, was legally insufficient to authorize the conviction of a violation of the provisions of section 715 of the Penal Code.

DECIDED APRIL 18, 1914.

Accusation of misdemeanor; from city court of Sparta—Judge Moore. February 7, 1914.

*T. M. Hunt,* for plaintiff in error. *R. L. Merritt, solicitor,* contra.

RUSSELL, C. J. This is the second appearance of this case before
this court. The evidence upon the trial now under review differs
from that contained in the record of the former trial (12 *Ga. App.*
533 (77 S. E. 828)), in that in the record sub judice there is no
reference to the testimony adduced upon the former trial to the
effect that the advance of $1.05 was made in response to the de-
mand of the laborer for an advance of $10.80; and, in fact, the pros-
ecutor, in testifying in the instant case, denied giving the testi-
mony attributed to him in the brief of the testimony of the former
trial. Regardless of this variance, however, we deem the case abso-
lutely controlled, as was held when it was here before, by the rul-
ing of this court in *Mulkey* v. *State;* 1 *Ga. App.* 521 (57 S. E.
1022), which amounted to a finding of not guilty as to the first
count, and placed the case solely upon the allegation that the ac-
cused obtained articles of the value of $1.05 with the intent not to
perform the services contracted for, and with the intent to defraud
the prosecutor. However, all the evidence shows that the $1.05
would not have been advanced except for the contractual relations
existing between the prosecutor and the accused. The advance-
ment depended wholly upon the original contract, or else the whole
amount advanced is a mere ordinary debt upon open account. It
was the only contract which called for the performance of services
by the accused for his employer, and the advancement can not be
separated from the original contract, because it is not claimed that
any fraudulent representation was made for the specific purpose of
inducing this advancement. This being true, the inference that
the defendant did not intend to carry out his original contract, at
the time this advancement of $1.05 was made, can not be supported,
unless the circumstantial evidence adduced for that purpose is in-
consistent with any other reasonable supposition than that it was
the deliberate purpose of the accused, at the time that he obtained
the $1.05, to quit his employer's service, to the injury of the latter.
On the contrary, it is reasonably plain that the accused intended to
continue to work under the contract. His employer testified that
he went to work after receiving the advance, cutting brush on the
employer's place. He seems to have disagreed with his employer
as to the necessity or importance of doing the precise work he was
directed to perform, and to have minimized the importance of cut-
ting the briers, as he suggested that he ought to be doing other

work; and he was in the wrong as to all of this, for it was his duty to do the work he was directed by his employer to do. It was wholly wrong for the defendant to become angry and quit his employer, but his refusal to continue in the specific employment to which he was directed by his employer, while it constituted a breach of the contract, does not indicate that at the time he obtained the advancement he did not intend to perform any labor or intended to quit the service of his employer. On the contrary, the fact that he started to work, and only quit because he thought other work more important, rather indicates that at the time he obtained the advancement he intended to continue in his employer's service; and the conclusion that he left his employer on account of unjustifiable anger is as reasonable as that his quitting related back to and depended upon a fraudulent intent entertained two days previously, when he obtained the $1 and the five cents worth of tobacco, if not much more so.

The provisions of section 715 were never intended as a means of collecting debt by the process of criminal law, and this case falls squarely within the ruling of this court in *Patterson* v. *State*, 1 *Ga. App.* 782 (58 S. E. 284), *Mobley* v. *State*, 13 *Ga. App.* 728 (79 S. E. 906), and numerous similar decisions.

*Judgment reversed.*